UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BIANCA UDUGAMPOLA, *et al.*,

    Plaintiffs,

v.

JANICE JACOBS,
Assistant Secretary for Consulate Affairs
U.S. Department of State, *et al.*,

    Defendants.

Civil Action No. 13-cv-0460 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

For almost twenty years, the family of the plaintiff Premadasa Udugampola ("Mr. Udugampola" or "the applicant"),[1] a Sri Lankan citizen, has been trying unsuccessfully to obtain a visa enabling him to immigrate to the United States. For the second time, the family has filed suit in this Court to obtain the relief denied to them administratively by the United States Department of State. Although the basis for the visa denial at issue in this second suit differs from the first suit, the claims and relevant legal doctrines remain unchanged, necessitating the same outcome of dismissal.

The applicant's daughter, plaintiff Bianca Uduguampola, and the applicant's wife, Plaintiff Somie Udugampola ("Mrs. Udugampola"), allege in this suit against Janice Jacobs, Assistant Secretary for Consular Affairs at the U.S. Department of State, Edward Ramotowski, Deputy Assistant Secretary for Visa Service, and Christopher R. Green, Consul General at the U.S. Embassy in Colombo, Sri Lanka, that the defendants violated the plaintiffs' Fifth

---

[1] Although Mr. Udugampola is named as a plaintiff, "[i]t is beyond dispute that Mr. Udugampola has no constitutional right to enter the United States, and also does not have standing to seek review of his visa denial." *Udugampola v. Jacobs ("Udugampola I")*, 795 F. Supp. 2d 96, 98 n.1 (D.D.C. 2011). The plaintiffs concede this point, noting that Mr. Udugampola "is the symbolic plaintiff in this lawsuit." Am. Compl., ¶ 11, ECF No. 9.

1

Amendment procedural Due Process rights by failing to provide a facially legitimate and bona fide reason for denying Mr. Udugampola's visa application for a third time. The defendants have moved to dismiss the plaintiffs' Amended Complaint and, for the reasons discussed below, this motion is granted. *See generally* Def.'s Mot. to Dismiss Am. Compl. ("Def.'s Mot."), ECF No. 11.

I.  BACKGROUND

This Court dismissed the plaintiffs' first suit for lack of subject matter jurisdiction, pursuant to the doctrine of consular non-reviewability, and for failure to state a claim under 12(b)(6). *See Udugampola v. Jacobs*, 795 F. Supp. 2d 96, 108 (D.D.C. 2011) ("*Udugampola I*"). At issue in that suit was the State Department's denial of the applicant's visa application, under Section 212(a)(3)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(3)(B), due to the applicant's alleged participation in terrorism. *Id.* at 98. A review of the plaintiffs' immigration histories is set forth in that prior opinion, *id.* at 98-100, and only briefly summarized here.

The applicant worked as a Sri Lankan police officer from 1957 to 1992, rising to the position of Deputy Inspector General of Police before his retirement. Am. Compl. ¶ 11, ECF No. 9. Mr. Udugampola's wife was granted asylum in the United States on February 23, 1995, and became a naturalized U.S. citizen on August 24, 2012. *Id.* ¶¶ 15, 23. Mr. and Mrs. Udugampola have four children, all of whom are U.S. citizens or lawful permanent residents. *Id.* ¶ 15.

Shortly after arriving in this country, Mrs. Udugampola filed, on March 22, 1995, a Form I-730 Refugee/Aslyee relative petition on behalf of her husband, Mr. Udugampola. *Id.* ¶ 16. Four years later, on September 15, 1999, the Immigration and Naturalization Service ("INS")

2

issued a Notice of Decision denying the I-730 petition, under 8 C.F.R. § 208.19, on the grounds that the applicant was ineligible for derivative asylum for allegedly having "ordered, incited, assisted, or otherwise participated in the persecution of any persons on account of race, nationality, membership, in a particular social group, or political opinion," when he served as Deputy Inspector General of Police for the Southern Province of Sri Lanka. *Id.* ¶ 17.[2]

The applicant's daughter, plaintiff Bianca Udugampola, subsequently filed, on September 5, 2003, a Form I-130 Petition for Alien Relative on behalf of her father, Mr. Udugampola.[3] Am. Compl. ¶ 18; *see also* I-130 Petition for Alien Relative, Complaint Ex. 1, ECF No. 1-7. This Petition was approved by U.S. Citizenship and Immigration Services ("USCIS") on April 23, 2004, but no action was taken on Mr. Udugampola's immigrant visa application for over five years until September 24, 2009, when the U.S. Embassy in Colombo, Sri Lanka, denied the request based on INA Section 212(a)(3)(B), 8 U.S.C. §1182(a)(3)(B), for the applicant's alleged participation in terrorism. Am. Compl. ¶¶ 18-20.

This 2009 visa application denial was the subject of the plaintiffs' first suit, which asserted, as in the instant suit, that the defendants, who were U.S. State Department officials, had violated the applicant's wife and daughter's Fifth Amendment Due Process rights for failing to supply a legitimate and bona fide reason for the visa denial. *See Udugampola I*, 795 F. Supp. 2d at 100. Following dismissal of that suit, plaintiff Bianca Udugampola, on behalf of her father, entered into an agreement with the U.S. Department of Justice, permitting Mr. Udugampola to submit a new visa application, along with new supporting documentation and a new interview, which State Department officials would adjudicate "without undue delay," based on the

---

[2] A form I–730 may be used by an alien admitted to the United States as a refugee or granted asylum status to obtain admission for a minor child or spouse pursuant to 8 C.F.R. § 208.21(c).

[3] A form I–130 Petition for Alien Relative is a family-based avenue for obtaining an immigration visa. A family member, who is either a United States citizen or lawful permanent resident, may file a Form I–130 as the petitioner on behalf of an alien relative seeking to gain entry into the United States. *See* 8 U.S.C. § 1151(b)(2)(A)(i).

3

previously approved Form I-130 petition submitted by the applicant's daughter. Am. Compl. ¶ 22; *see also* Compl., Ex. 2 (Letter, dated November 8, 2011, to plaintiffs' counsel from Michelle Lo, Assistant U.S. Attorney, U.S. Attorney's Office for the District of Columbia ("USAO Letter"), ¶ 3), ECF No. 1-8. The agreement expressly stated that "the State Department does not make any representation as to the outcome of its adjudication of the new visa application." *See* USAO Letter ¶ 5.

On March 14, 2012, Mr. Udugampola appeared for his interview at the U.S. Embassy in Colombo, Sri Lanka, and submitted his third visa application, along with new supporting documentation. Am. Compl. ¶ 22. When no decision was forthcoming within a year, the plaintiffs filed suit in this Court, on April 9, 2013, seeking mandamus and declaratory relief to compel the State Department to issue a decision on Mr. Udugampola's visa. Am. Compl. ¶¶ 23-24. Less than two months later, on July 8, 2013, the Consulate issued a decision on Mr. Udugampola's new application, again denying the applicant's visa application, but based on a different statutory provision, namely, Section 212(a)(3)(E)(iii)(II) of the INA, 8 U.S.C. §1182(a)(3)(E)(iii)(II), which authorizes exclusion of any alien who has been involved in "extrajudicial killing[s]." Am. Compl. ¶¶ 24, 36. This consular action prompted the plaintiffs to amend their Complaint in this case and modify the relief sought.

In sum, over the last fifteen years, the applicant's three visa applications have been consistently denied but on different grounds: in 1999, the applicant's visa application was denied, pursuant to 8 C.F.R. § 208.13(c)(2)(i)(E), due to his alleged participation in the "persecution of any persons on account of race, nationality, membership, in a particular social group, or political opinion," *id.* ¶ 17; in 2009, the applicant's visa application was denied, under 8 U.S.C. §1182(a)(3)(B), due to his alleged participation in terrorism, *id.* ¶ 20; and, finally, in

2013, the applicant's visa application was denied, under 8 U.S.C. §1182(a)(3)(E)(iii)(II), due to his alleged involvement in "extrajudicial killing[s]," *id.* ¶ 24. The plaintiffs allege that the varying bases for denial are internally inconsistent, noting that "one line of reasoning precludes the application of another," because allegations of "past persecution or extrajudicial killings . . . requires that Mr. Udugampola be categorized as a state actor," while accusing him of being "engaged in terrorist activity," amounts to calling the Government of Sri Lanka a "terrorist organization" under 8 U.S.C. §1182(a)(3)(B)(iv), when, as a "foreign sovereign[] . . . recognized by the U.S. Government," it "cannot be [so] characterized." Am. Compl., ¶ 43,n. 1.

The plaintiffs' Amended Complaint asserts that the defendants violated the plaintiffs' Fifth Amendment Due Process Rights by failing to provide a facially legitimate or bona fide reason for denial of Mr. Udugampola's visa application, under 8 U.S.C. § 1182(a)(3)(E)(iii)(II), Am. Compl. ¶¶ 37-40, and for either not considering or denying a waiver, under 8 U.S.C. §1182(d)(3), which would permit Mr. Udugampola to enter the country even if deemed otherwise inadmissible. Am. Compl. ¶ 41. The plaintiffs seek a declaratory order that the most recent visa denial in 2013 violates both the Fifth Amendment Due Process Clause and the Administrative Procedure Act, and an injunction barring the defendants from relying on 8 U.S.C. § 1182(a)(3)(E)(iii)(II) as a basis for excluding the applicant from the United States. *See* Am. Compl., Prayer of Relief. The defendants have moved to dismiss the Amended Complaint and that motion is ripe for decision.

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton,* ─U.S. ─, 133 S. Ct. 1059, 1064

5

(2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Sci.'s*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 506-07 (2006); FED. R. CIV. P. 12(h)(3).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal citations and quotation marks omitted). The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating subject matter jurisdiction, the court, when necessary, may look beyond the complaint to "undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert*, 974 F.2d at 197; *see also Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005). The burden of establishing any jurisdictional facts to support the exercise of the subject matter jurisdiction rests on the plaintiff. *See Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010); *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).

## B. Failure to State a Claim Under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to encourage brevity and, at the same time, "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipses in original; internal quotations and citations omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). The Supreme Court has cautioned that although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, [] it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Iqbal*, 556 U.S. at 678). A claim is facially plausible when the plaintiff pleads factual content that is more than "merely consistent with a defendant's liability," but allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action" to provide "grounds" of "entitle[ment] to relief," *Twombly*, 550 U.S. at 555 (alteration in original), and "nudge[ ] [the] claims across the line from conceivable to plausible," *id*. at 570. Thus, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In considering a motion to dismiss for failure to

plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact. *Twombly*, 550 U.S. at 555-56; *Sissel v. United States Dep't of Health and Human Servs.*, No. 13-5202, 2014 U.S. App. LEXIS 14397, at *7 (D.C. Cir. June 29, 2014) (in considering Rule 12(b)(6) motion, the "court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept the plaintiff's legal conclusions as correct") (internal quotations and citations omitted). In addition, courts may "ordinarily examine" other sources "when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. 322 (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)); *see also English v. D.C.*, 717 F.3d 968, 971 (D.C. Cir. 2013)**.**

## III. DISCUSSION

The defendants move to dismiss the plaintiffs' Amended Complaint on the same two grounds that they successfully moved to dismiss the same plaintiffs' claims in *Udugampola I*: that the court lacks subject matter jurisdiction, pursuant to Federal Rule 12(b)(1), due to the doctrine of consular nonreviewability, Defs.' Mem. Supp. of Mot. to Dismiss ("Defs.' Mem.") at 6-9; and, second, assuming subject matter jurisdiction exists, that the plaintiffs fail to state a claim for relief, pursuant to Federal Rule 12(b)(6), because defendants have a legitimate and bona fide reason for denying Mr. Udugampola's visa application and the "[p]laintiffs do not

8

allege any plausible claim of bad faith," *id.* at 11.  The Court addresses each basis for dismissing the suit *seriatim* below.[4]

### A. The Court Lacks Subject Matter Jurisdiction to Review Plaintiffs' Claims

The parties do not dispute that under the doctrine known as consular non-reviewability, "a consular official's decision to grant or deny a visa is not subject to judicial review."  Am. Compl. ¶ 27 (citing *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)); Defs.' Mem. 7-8; *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude an alien."); *Udugampola I*, 795 F. Supp. 2d at 102.  Nonetheless, the plaintiffs contend that they fall within the limited exception to this doctrine allowing judicial review of a consular decision denying a visa application when the plaintiff is a U.S. citizen or legal resident, who claims that the decision violated a constitutionally protected liberty interest.  Pls.' Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n") at 6 (noting that the circumstance for application of the exception "is precisely the case plaintiffs have brought before this Court"); Am. Compl. ¶ 5 (citing *Kleindienst* v. *Mandel*, 408 U.S. 753, 770 (1972) (exercising jurisdiction where U.S. citizen challenged visa waiver denial as a violation of the First Amendment); *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1163 (D.C. Cir. 1999); *Abourezk v. Reagan*, 785 F.2d 1043, 1050 (D.C. Cir. 1986) (finding that "presumably, had the [Supreme] Court harbored doubts concerning federal court subject matter jurisdiction in *Mandel*, it would have raised the issue on its own motion"); *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 126 (2d Cir. 2009); *Bustamante v. Mukasey*, 531 F.3d

---

[4] The defendants also contend that since "this is the same action as the earlier one," the "Plaintiffs' Claim Fails on Res Judicata Grounds."  *Id*. at 12 (capitalization in original).  Since the defendants' motion is resolved on other grounds, this ground for dismissal need not be addressed.

1059, 1062 (9th Cir. 2008); *Adams v. Baker*, 909 F.2d 643, 647–48 (1st Cir. 1990)). The defendants argue that the limited exception to the doctrine of consular nonreviewability is inapplicable to the plaintiffs because "the visa refusal at issue in this action has not implicated any constitutionally protected interest" of the plaintiffs. Defs.' Mem. at 9. The Court agrees with the defendants.[5]

To establish entitlement to this limited exception to the consular nonreviewability doctrine, the plaintiffs bear the burden of demonstrating that the visa decision violated a constitutionally protected interest. *See Saavedra Bruno*, 197 F.3d at 1163-64; *Jathoul v. Clinton*, 880 F. Supp. 2d 168, 171 (D.D.C. 2012) ("Plaintiff bears the burden of establishing that the consular action falls within this exception . . . and even where the exception applies, judicial review should be extremely limited") (citations and internal quotations omitted). In this case, the plaintiffs argue that they meet this burden because the applicant's wife has a "constitutionally protected liberty interest in her marriage and her family life" that entitles her to constitutionally adequate procedures before her husband's visa application can be denied. Pls.' Opp'n at 6; *see also* Am. Compl. ¶ 27 ("As applicable here, U.S. citizen spouses of visa applicants have a 'protected liberty interest in marriage' that entitles them to 'constitutionally adequate procedures' in a consulate's decision whether to grant or deny a family-based visa, and review of the denial of a spouse's visa."). The defendants counter that "Courts in this District have expressly rejected the claim that marriage to a U.S. citizen is a constitutionally protected right to entitle judicial review of a spouse's visa application denial." Defs.' Mem. at 8.

---

[5] The defendant raises the same threshold issue here noted in *Udugampola I* whether the applicant's wife "has standing as the current visa denial is based on a petition filed on the applicant's behalf by his daughter." Defs.' Mem. at 12; Defs.' Reply at 4 n. 2; *Udugampola I,* 795 F. Supp. 2d at 106 n.9. The Court need not address this standing issue because, even assuming, *arguendo*, that the applicant's wife has standing to assert a Fifth Amendment due process claim, the Court nonetheless lacks subject matter jurisdiction.

The defendants are correct that, contrary to the holdings of certain cases decided in the Ninth Circuit, in this Circuit the exception to the consular nonreviewability doctrine has been found generally inapplicable to spousal visa denials. Indeed, while noting that the Constitution protects an individual's right to marry and the marital relationship, this Court concluded in *Udugampola I* that "these constitutional rights are not implicated when one spouse is removed or denied entry into the United States." 795 F. Supp. 2d at 105 (citing *Swartz v. Rogers*, 254 F.2d 338, 339 (D.C. Cir. 1958); *Bangura v. Hansen*, 434 F.3d 487, 496 (6th Cir. 2006); *Almario v. Attorney Gen.*, 872 F.2d 147, 151 (6th Cir. 1989); *Burrafato v. U.S. Dep't of State*, 523 F.2d 554, 556 (2d Cir. 1975); *Noel v. Chapman*, 508 F.2d 1023, 1027–28 (2d Cir. 1975); *Movimiento Democracia, Inc. v. Chertoff*, 417 F. Supp. 2d 1350, 1353 (S.D. Fla. 2006)). The plaintiffs have presented no persuasive or binding caselaw that warrants revision of the legal conclusion reached by this Court in *Udugampola I* "that the plaintiffs' claim therefore does not fall into the narrow exception to the consular nonreviewability doctrine." 795 F. Supp. 2d at 106.[6] On the contrary, subsequent cases have reached the same conclusion on similar facts. *See, e.g.*, *Jathoul*, 880 F. Supp. 2d at 172 (concluding that court lacked subject matter jurisdiction since plaintiff's constitutional rights are not implicated when her spouse's visa application is denied); *Mostofi v. Napolitano*, 841 F. Supp. 2d 208, 212-13 (D.D.C. 2012) (same); *Gogilashvili v. Holder*, 2012 U.S. Dist. LEXIS 87832, 17-19 (E.D.N.Y. June 25, 2012) (doctrine of nonreviewability applies to remove subject matter jurisdiction to hear citizen plaintiffs' challenge to visa denial for their foreign national husband and father).

---

[6] The fact that the applicant's wife has become a U.S. citizen in the interim since *Udugampola I* was decided, *see* Am. Compl. ¶ 35, is immaterial. The Court made clear in *Udugampola I* that the exception to the consular nonreviewability doctrine, if applicable, would be available to both U.S. citizens and legal resident aliens. *See Udugampola I*, 795 F. Supp. 2d at 103.

The Court is cognizant that denial of Mr. Udugampola's visa application to immigrate to this country will assuredly place "burdens upon the marriage." *Swartz*, 254 F.2d at 339. These burdens have clearly motivated the plaintiffs to persist in their twenty year effort to find a way for Mr. Udugampola to gain entry to the United States. The applicant's wife, however, has a "choice of living abroad with her husband or living in this country without him." *Id*. This may seem like a Hobson's choice but denial of Mr. Uduguampola's visa application does "not in any way destroy the legal union which the marriage created." *Id.*; *see Silverman v. Rogers*, 437 F.2d 102, 107 (1st Cir. 1970) (stating that there was "no merit" in contention that government was "destroying" plaintiff's marriage by refusing to allow spouse the right to live in the United States); *Mostofi*, 841 F. Supp. 2d at 212-13 ("Defendants' denial of [the plaintiff's] visa affected the physical conditions of the marriage . . . but not the marriage itself.").

Accordingly, since no constitutional liberty interest of the plaintiffs is implicated by the applicant's visa denial, this Court does not have subject matter jurisdiction, under the doctrine of consular nonreviewability, to review the defendants' denial of the visa application.[7]

### B.   The Amended Complaint Must be Dismissed for Failure to State a Claim

Even assuming *arguendo*, that the applicant's wife was entitled to *Mandel* review, the plaintiffs would still fail to state a claim for relief. The limited judicial review granted when constitutional rights are implicated by a visa application decision only tests whether the consular office provided a facially legitimate and bona fide reason to deny the alien entry into the United States. *Mandel*, 408 U.S. at 770 (where "the Executive exercises this power [ ] on the basis of a

---

[7] The Amended Complaint requests relief under both the Fifth Amendment and "the Administrative Procedure[] Act," ("APA"), Am. Compl., Prayer of Relief, but the APA cannot provide a statutory basis for relief. As the defendants correctly point out, the APA does not provide the plaintiffs with a cause of action to assert a claim otherwise barred by the doctrine of consular non-reviewability. Defs.' Mem. at 7; *see Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 6 (D.D.C. 2009) ("D.C. Circuit has specifically held that the Administrative Procedure Act provides no basis for challenging consular visa decisions," citing *Saavedra Bruno*, 197 F.3d at 1158).

facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification" against constitutional interests); *Bustamante*, 531 F.3d at 1062. In conducting this review, "a reviewing court need only satisfy itself that the conduct alleged fits within the statutory provisions relied upon as the reason for the visa denial, or may determine if there is evidence that either supports the reason or at least supports the consular officer's reasonable belief that the reason exists." *Am. Acad. of Religion*, 573 F.3d at 134 (citing 8 U.S.C. § 1201(g)).

The plaintiffs argue that the defendants' decision "lacks the minimum specificity required to qualify as a facially legitimate and bona fide reason for the visa denial" because "the Consulate not only has failed to point to its specific legal basis for denying Mr. Udugampola's visa, it also has not explained its reason for invoking 8 U.S.C. § 1182 (a)(3)(E)(iii)(II) to exclude him from the United States." Pls.' Opp'n at 7 (citations omitted). The Court disagrees. For the same reasons that there was a facially legitimate and bona fide reason to deny Mr. Udugampola's second visa application under 8 U.S.C. § 1182(a)(3)(B) in *Udugampola I*, a facially legitimate and bona fide reason was provided to deny his third visa application under 8 U.S.C. § 1182 (a)(3)(E)(iii)(ii).

First, the defendants' decision is facially legitimate, since a reason for the visa denial is given in the form of a citation to Section 212(a)(3)(E)(iii)(II) of the INA, 8 U.S.C. § 1182 (a)(3)(E)(iii)(ii). The INA clearly states that the defendants need not provide a specific statutory basis for a visa denial when the reason for exclusion falls, as here, within Section 212(a)(2) or (a)(3). 8 U.S.C. § 1182 (b)(3); *see Udugampola I*, 795 F. Supp. 2d at 107 ("INA states clearly that the defendants need not provide an applicant even the statutory basis for denial if the reason for denial is based under Sections 212(a)(2) or (a)(3)."); *Jathoul*, 880 F. Supp. 2d at 173 ("8

U.S.C. § 1182(b)(3) expressly provides that the government need not identify the specific provision or provisions of law under which the alien is inadmissible where it finds him inadmissible under §§ 1182(a)(2) or (a)(3) . . . [a]s a result, the more general reference to 8 U.S.C. § 1182(a)(3) is adequate") (internal quotations and citations omitted). Thus, the citation to Section 212(a)(3)(E)(iii)(II) of the INA, in the applicant's visa denial provided a more specific reason than minimally required and confers facial legitimacy on the defendants' decision.[8]

The plaintiffs' pursuit of a more detailed explanation for the applicant's most recent visa denial is unavailing. They complain that INA's Section 212(a)(3)(E)(iii)(II), under which the applicant's most recent visa application was denied, is "broad and vague," Pl.'s Opp'n at 6, and does not make clear "whether the Consulate is accusing Mr. Udugampola of extrajudicial killing in and of itself, of ordering extrajudicial killing, of inciting extrajudicial killing, of assisting in extrajudicial killing, or 'otherwise participat[ing] in the commission of extrajudicial killing,'" Pl.'s Opp'n at 7 (quoting 8 U.S.C. § 1182 (a)(3)(E)(iii)(II)).[9] While the precise nature of the alleged conduct underlying the visa denial may help the plaintiffs come to terms with the defendants' decision to exclude Mr. Udugampola from the United States, such precision is not necessary to find the Consulate's decision facially legitimate. Indeed, whether the applicant "committed, ordered, incited, assisted, or otherwise participated in the commission of . . . any extraditional killing," the outcome would be the same—he is inadmissible.

---

[8] The plaintiff points to a recent Ninth Circuit case holding that citation to a statutory basis under Section 212(a)(2), standing alone, is insufficient to provide a facially legitimate and bona fide reason for denying a visa application. *See Din v. Kerry*, 718 F.3d 856, 862 (9th Cir. 2013). This decision is not binding on this Court. In any event, *Din* is distinguishable since in that case the plaintiffs had no idea "what [the applicant] could have done to be found inadmissible on terrorism grounds," under 8 U.S.C. § 1182(a)(3)(B). *Din*, 718 F.3d at 861. By contrast, here the plaintiffs are clearly on notice that Mr. Udugampola's alleged conduct while serving as Deputy Inspector General of Police in Sri Lanka during a civil war is the factual underpinning for all three of his visa application denials.
[9] 8 U.S.C. § 1182 (a)(3)(E)(iii)(II) provides that: "Any alien who, outside the United States, has committed, ordered, incited, assisted, or otherwise participated in the commission of-- . . . (II) under color of law of any foreign nation, any extrajudicial killing, as defined in section 3 (a) of the Torture Victim Protection Act of 1991 (28 U.S.C. 1350 note), is inadmissible."

Second, the plaintiffs contend that even if providing a statutory citation as the basis for the visa denial is sufficient to deem the Consulate's decision "facially legitimate," the decision is not "bona fide" because the "consulate acted in bad faith." *See* Pl.'s Opp'n at 7-8. In support of this bad faith claim, the plaintiffs aver that the applicant's visa has been denied over the years for various reasons, including "past persecutor," "terrorism," and now "extrajudicial killing," "as though the Consulate keeps trying in hopes that one will 'stick.'" Am. Compl. ¶ 43. According to the plaintiffs, "[t]he Consulate's series of visa denials on different grounds thus appears to be in bad faith, which likewise renders its decision not bona fide." *Id*. To the contrary, all three denials of the applicant's visa applications have been based on his "actions as Deputy Inspector General of the Sri Lankan Police and alleged participation in the persecution of others." Defs.' Reply at 7. Thus, no matter the specific INA provision cited as the basis for the denial, the genesis for the denials has remained consistent.[10]

Moreover, the defendants are correct that the plaintiffs' "claim for bad faith is not well supported where this [C]ourt has previously found that information in the public record supported the Consulate's" prior decision to deny Mr. Udugampola's visa. Defs.' Reply at 7. Indeed, news articles reporting on the Sri Lankan civil war that were previously submitted by the defendants during the proceedings in *Udugampola I*, lend credence to the conclusion that the visa denial decision is bona fide rather than predicated on bad faith. *See Udugampola I*, 795 F. Supp. 2d at 107 (citing articles reporting, *inter alia*, that "[the applicant] has led an elite squad of similarly motivated men on a singular mission—to wipe out the insurgency at whatever human

---

[10] The plaintiffs argue that this case is like *Abourezk II* where the D.C. Circuit found that the State Department had "so obscured its position" for denying the visa that its reason could not be facially legitimate or bona fide. *Abourezk*, 785 F.2d at 1059. That case, however, is easily distinguishable from the instant matter. In *Abourezk*, the defendants "never squarely advanced a rationale" but took an "either/or" approach that left it entirely unclear whether the applicant was being excluded based on government ties or organizational memberships. *Id*. at 1060. By contrast, the defendants' position has never been obscure with regards to Mr. Udugampola's inadmissibility. The applicant is inadmissible because of alleged actions that he took as a Deputy Inspector General of Police in Sri Lanka.

cost," and was perhaps involved in "government death squads [which] killed nearly 40,000 people in a crackdown on left-wing rebels").

Finally, the plaintiffs miss the mark when they argue that the Consulate's bad faith may somehow be reflected by the adjudication of "the new visa application based on documents and evidence that were submitted in 2004," because "[s]uch an unsatisfactory review would be in clear violation of the government's Agreement that the Consulate would adjudicate a new application de novo, in light of new supporting evidence and a new interview of the applicant." Pl.'s Opp'n at 8. The plain terms of the USAO Letter make clear that "[a]ll standard procedures will be followed for the [new visa] application." USAO Letter at ¶ 1. Such "standard procedures" presumably allow, if not require, review of information available and relevant to the adjudication of the application, including any information considered in prior consular decisions to deny the applicant's visa. Although the defendants were willing to take yet another look at Mr. Udugampola's visa application, including new information he could provide to obtain a visa, "[t]he consular officer has no authority or discretion to disregard information relevant to an applicant's eligibility for a visa in their adjudication." Defs.' Reply at 8. Moreover, the USAO Letter makes clear that no promises were made by the State Department that the outcome of the adjudication of the visa application would differ in any way from the prior adjudications. Thus, the fact that the outcome of the 2013 visa application adjudication was the same as the prior two visa application denials cannot be viewed as violative of the agreement nor any indication of bad faith.

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim is GRANTED. The plaintiffs' Amended Complaint is dismissed.

An order consistent with this Memorandum Opinion will be entered.

Date: September 29, 2014

_____
BERYL A. HOWELL
United States District Judge